2013 Ark. 146

**Rahsaan Aki TAYLOR, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 12–340.**

Supreme Court of Arkansas.

April 11, 2013.

---

Debra J. Reece, Russellville, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Justice.

Appellant Rahsaan Aki Taylor appeals the order of the Pulaski County Circuit Court denying his petition for postconviction relief under Rule 37.1 of the Arkansas Rules of Criminal Procedure. Taylor argues on appeal that the circuit court erred in denying his petition, which asserted that his trial attorney was ineffective for incorrectly identifying letters used to impeach a witness for the State and for failing to call two witnesses. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(a)(8) (2012). We affirm.

On March 3, 2010, a Pulaski County jury convicted Taylor of capital murder in the death of Odilon Guerrero during an aggravated robbery committed October 31, 2007. Taylor was sentenced to life imprisonment without parole, enhanced by ten years for the use of a firearm to commit a felony. We affirmed his conviction in his direct appeal. *See Taylor v. State,* 2011 Ark. 10, 370 S.W.3d 503.

On November 4, 2007, police pulled over a black Mazda 626 because its headlights were not on. As the car stopped, a black male, later identified as Taylor, wearing a red shirt and a black jacket, got out of the back seat and ran. A chase ensued. Officers testified that Taylor jumped over a fence, fell down a hill, and ran into a four-by-four-foot culvert. Then Taylor ran

across a parking lot, stole a car from an Exxon gas station, and drove to his house, where he jumped over two more fences and escaped the police. An officer recognized the address where the stolen car was abandoned as the home of Taylor and showed Taylor's picture to the officers involved in the chase. Four of the five officers recognized Taylor from the picture. All four testified at trial that they had gotten a good look at Taylor during the chase. During the course of the chase, Taylor dropped his jacket. In a pocket, police found a Jimenez 9–millimeter pistol, which was later identified as the weapon used to kill Guerrero. Taylor was arrested in Herrin, Illinois, on December 4, 2007.

The driver of the Mazda 626 was identified as Tyeiska Roberson. The passenger in the front seat was identified as her brother, Terry Cook. Roberson was questioned the next day and told police that Taylor had been the man in the back seat who fled. She also stated that she had driven Taylor and her brother to the trailer park where Guerrero was murdered. She was charged as an accomplice to the murder.

At the pretrial-motions conference, trial counsel James Clouette stated that he intended to call Mary Moore, Taylor's mother, as his only witness. However, the State objected on the grounds that Clouette had not provided Moore as a witness. Moore's testimony was disallowed.

Prior to trial, Moore gave Clouette letters written by Roberson to her boyfriend while she was imprisoned. The letters stated that her attorney hoped he could get her placed in boot camp and that Roberson had "taken a charge" for her brother. At trial, Clouette confronted Roberson with the letter regarding boot camp in order to imply that she had struck a deal with the State in return for her testimony.

However, Clouette referred to the letter as one Roberson had written to Taylor. Roberson denied having written the letter and stated that she did not recognize the handwriting as her own.

At trial, Clouette called Nicole Swopes, who testified that she had been with Taylor all night on October 31, 2007. She further testified to the injuries that Taylor had received in a March 2007 car accident. She testified that Taylor had been on crutches for most of the summer, that he was still unable to walk quickly, and that he had to take breaks while walking on October 31, 2007.

On direct appeal, Taylor argued that the circuit court erred in denying his motion for directed verdict because the State failed to sufficiently corroborate Roberson's testimony. We affirmed. *Taylor, supra.* For his Rule 37 claim of ineffective assistance of counsel, Taylor asserted that Clouette erred in not using Roberson's letters to impeach her testimony properly. He further asserted that Clouette erred by not calling Moore or a medical doctor to show that Taylor would not have been able to perform the actions taken by the man fleeing the Mazda 626 on the night of November 4, 2007.

At the Rule 37 hearing, Taylor called Roberson, who admitted that she had written the letters. However, she denied that she had been given a deal for her testimony and denied that she was "taking a charge" to help her brother.

Taylor also called Moore, who testified that Taylor had lived with her after the car accident in March 2007. She testified that the wreck had left Taylor with a broken hip, several broken ribs, and a collapsed lung. She also testified that Taylor had not undergone physical therapy for the injuries, that he had not been able to go back to work at the time of Guerrero's

murder, and that he was unable to climb the step into her house at the end of October 2007 without leaning on the railing.

Taylor then called Dr. James Kebler as an expert witness in the field of orthopedics. Kebler testified that, based on the information he had received from Taylor's counsel and Moore, he was 90 to 95 percent sure that Taylor would have been physically incapable of the actions taken by the suspect who ran from the police on the night of November 4, 2007. On cross-examination, Kebler admitted that he had not examined Taylor and that he had not inspected the area where Taylor fled from the police.

After the Rule 37 hearing, the circuit court denied Taylor's petition. The circuit court found that the jury was made aware of Taylor's position that Roberson was testifying in order to protect herself and her brother and to get a favorable plea. Therefore, the circuit court found that Taylor was unable to show prejudice on these points. The circuit court also noted that Swopes had testified as to Taylor's physical condition and provided Taylor with an alibi for the night of Guerrero's murder. The circuit court stated that the testimony of Moore and Dr. Kebler regarding their opinion of what Taylor could not have done would not have successfully refuted what the officers testified that they saw him do.

 This court will reverse the circuit court's decision granting or denying post-conviction relief only when that decision is clearly erroneous. *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* In reviewing an ineffective-assistance-of-counsel

claim, we consider the totality of the evidence. *Keck v. State*, 2012 Ark. 145, 2012 WL 1130588.

 When considering an appeal from a circuit court's denial of a Rule 37 petition, the sole question presented is whether, based on the totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the circuit court clearly erred in denying postconviction relief. *Sparkman v. State*, 373 Ark. 45, 281 S.W.3d 277 (2008). The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance of counsel must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). Second, the petitioner must show that counsel's deficient performance so prejudiced the petitioner's defense that he was deprived of a fair trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Springs, supra.*

 For his first point on appeal, Taylor asserts that the circuit court clearly erred in denying his Rule 37 petition for ineffective assistance of counsel because Clouette was ineffective for not properly impeaching Roberson with the letters she wrote while imprisoned. Because it is clear that Taylor was not prejudiced by

Clouette's actions, we need not decide if the actions were erroneous. There is no reason for a court deciding an ineffective-assistance claim to address both components of the inquiry if the defendant makes an insufficient showing on one. *Strickland, supra.*

At the Rule 37 hearing, Roberson testified that she had not been offered a deal by the prosecutor to testify against Taylor, that she was not protecting her brother and had not "taken a charge" for him, and that she was testifying only out of the goodness of her heart. Taylor alleges that if Clouette had correctly identified the person to whom the letter had been written, it would have been entered into evidence. Taylor contends that the contents of the letter would have shown the jury that Roberson was "taking a charge" for her brother and that she hoped to get a plea deal. However, the circuit court found that the jury was made aware of Taylor's assertion that Roberson was testifying against him only to protect herself and her brother and to get a favorable deal from the prosecutor.

In order to meet the second prong of the *Strickland* test, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Howard v. State,* 367 Ark. 18, 238 S.W.3d 24 (2006). The language "the outcome of the trial," refers not only to the finding of guilt or innocence, but also to the possible prejudice in sentencing. *Id.* Taylor cites *Wicoff v. State,* 321 Ark. 97, 900 S.W.2d 187 (1995), and *Russell v. State,* 302 Ark. 274, 789 S.W.2d 720 (1990), in support of his argument. However, these cases are distinguishable.

In *Wicoff,* the defendant was charged with sexual abuse and incest with his ten- and eleven-year-old stepdaughters. At trial, the only evidence of the crime was testimony from the two girls. This court held that it was prejudicial not to call witnesses to impeach their testimony. Similarly, in *Russell,* the only evidence linking the defendant to the murder he was charged with was the testimony of Kenneth Armstrong. This court held that it was prejudicial for Russell's attorney not to call a witness who would have testified that it was Armstrong who likely committed the murder.

In *Gaye v. State,* 2009 Ark. 201, 307 S.W.3d 1, this court distinguished *Wicoff.* We stated that, in *Wicoff,* the credibility of the victims was highly relevant as their testimony was essentially the only evidence that the State presented against Wicoff. In *Gaye,* not calling a witness who would have testified that he knew Gaye and that he did not see him at the scene of the crime was not prejudicial, because it was not a case where the State's evidence was lacking. There were several witnesses who placed Gaye at the scene of the crime.

In this case, as well, the State's evidence is not lacking. While Taylor argues that Roberson's eyewitness testimony is the only evidence tying him directly to the murder, this is not accurate. Four police officers testified that Taylor was the man who fled from them on November 4, 2007, and who dropped a jacket containing the murder weapon. Because Roberson's testimony was not the only evidence tying Taylor to the murder and the jury had been made aware of Taylor's arguments impeaching Roberson, Taylor was not prejudiced by Clouette's cross examination of Roberson.

For his second point on appeal, Taylor asserts that the circuit court clearly

erred in denying his Rule 37 petition for ineffective assistance of counsel because Clouette failed to present evidence of Taylor's injuries. Taylor contends that there is a reasonable probability that, had Clouette called Moore and a doctor to testify, the jury would not have convicted him.

 However, the omission of a witness when the witness's testimony is cumulative does not deprive the defense of vital evidence. *Helton v. State,* 325 Ark. 140, 924 S.W.2d 239 (1996). Swopes testified that Taylor had been injured in the March 2007 car wreck and that he had spent the summer on crutches and had limited mobility. The jury was able to hear testimony regarding his injuries. The testimony given by Moore and Kebler at the Rule 37 hearing relating only to Taylor's injuries would have been cumulative to Swopes's testimony.

Further, Dr. Kebler was not Taylor's doctor, had never examined Taylor, and based his report only on Taylor's medical records and information given by Taylor's counsel and Moore. Given all the evidence, we agree with the circuit court's finding that the testimony of Moore and Dr. Kebler as to their opinions of what Taylor was physically capable of doing on October 31, 2007, would not have successfully refuted what the officers involved in the chase actually saw Taylor do.

|9We conclude that Taylor has not shown prejudice on either point he has brought on appeal. Therefore, we affirm the circuit court's denial of Taylor's petition for postconviction relief.

Affirmed.

HART, J. concurs.