SLIP OPINION

Cite as 2014 Ark. 203

# SUPREME COURT OF ARKANSAS

No. CR-13-668

| | | |
|---|---|---|
| ALONZO WATSON | | **Opinion Delivered** May 8, 2014 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI |
| V. | | COUNTY CIRCUIT COURT, |
| | | [NO. 60CR-10-3785] |
| | | |
| STATE OF ARKANSAS | | HONORABLE HERBERT THOMAS |
| | APPELLEE | WRIGHT, JUDGE |
| | | |
| | | <u>AFFIRMED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Alonzo Watson appeals the order entered by the Pulaski County Circuit Court denying his petition for postconviction relief that he brought pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure. For reversal, Watson contends that the circuit court erred in ruling that he did not receive ineffective assistance of counsel at trial and on appeal. We affirm the circuit court's decision.

The record reflects that the prosecuting attorney in Pulaski County charged Watson with capital murder in connection with the death of Daniel Harris, whose body was found in a deserted area near a warehouse in Jacksonville on the morning of September 3, 2010. The evidence at trial disclosed that Harris died of blunt-force trauma to the head after having been struck multiple times with a piece of concrete. Watson was the last known person seen with Harris prior to his demise. In the early-morning hours of September 3, Watson encountered a number of persons and confessed to four of them that he had killed someone.

SLIP OPINION

One of those persons was Sara Whipple, Watson's girlfriend, who testified that Watson appeared at her home at approximately 3:00 a.m. and that Watson had scratches on his body and blood on his clothing. Another was Marcus Hildreth who, in addition to seeing Watson on the morning of the murder, was later incarcerated with Watson after Watson's arrest for Harris's murder. Hildreth testified that Watson told him during their incarceration that "there had been a fight" and that he had struck Harris with a rock. A jury in Pulaski County found Watson guilty of capital murder. The prosecutor had waived the death penalty; therefore, the conviction resulted in a sentence of life imprisonment without parole. Watson appealed his conviction and sentence, and this court affirmed on the sole issue that the circuit court did not err in denying Watson's motion to suppress a statement that he had given to the police. *Watson v. State*, 2012 Ark. 430.

On January 16, 2013, Watson filed a timely petition for postconviction relief in which he asserted that he had received ineffective assistance of counsel at trial and on direct appeal. By an order dated April 22, 2013, the circuit court denied the petition without a hearing. This appeal followed.

At the outset, we note that this court does not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Conley v. State*, 2014 Ark. 172, ___ S.W.3d ___. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. In making a determination on a claim of ineffective assistance of counsel, this court considers the totality

SLIP OPINION

of the evidence. *State v. Harrison*, 2012 Ark. 198, 404 S.W.3d 830.

Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143. In asserting ineffective assistance of counsel under *Strickland*, the petitioner first must demonstrate that counsel's performance was deficient. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Adams v. State*, 2013 Ark. 174, ___ S.W.3d ___. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Scott v. State*, 2012 Ark. 199, 406 S.W.3d 1. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55.

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Myers v. State*, 2012 Ark. 143, 400 S.W.3d 231. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *White v. State*, 2013 Ark. 171, ___ S.W.3d ___. A reasonable probability is a probability sufficient to undermine confidence in the outcome

of the trial. *Golden v. State*, 2013 Ark. 144, ___ S.W.3d ___.

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Taylor v. State*, 2013 Ark. 146, ___ S.W.3d ___. We also recognize that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697).

On appeal, Watson argues that he was denied effective assistance of counsel in a number of respects. First, Watson argues that his trial counsel was ineffective for not investigating the possibility that another individual, Allen Boyd, may have committed the murder. In his petition, Watson alleged that Boyd had given a statement to the police advising that Harris had raped Whipple three weeks prior to the murder. Watson argued that the rape provided a motive for Boyd to kill Harris because it was "common knowledge in the community" that Boyd, Whipple's former boyfriend "was very distraught over her ending their relationship" and that Boyd was an "extremely jealous and a very violent man." Watson continues to argue on appeal that his counsel had a duty to investigate all possible defense strategies and that, had counsel investigated this matter, it is likely that the jury's attention would have been drawn to Boyd because of Boyd's motive to kill Harris.

In its order, the circuit court dismissed this claim on the ground that the allegation lacked factual substantiation, as there was no evidence connecting Boyd to the murder. We cannot say that the circuit court's finding is clearly erroneous. Although it is true that counsel

has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary, a petitioner under Rule 37.1 who alleges ineffective assistance of counsel for failure to perform adequate investigation must delineate the actual prejudice that arose from the failure to investigate and demonstrate a reasonable probability that the specific materials that would have been uncovered with further investigation could have changed the outcome of trial. *See Breeden v. State*, 2014 Ark. 159, ___ S.W.3d ___ (per curiam). The burden is entirely on the claimant to provide facts that affirmatively support his claims of prejudice, as neither conclusory statements nor allegations without factual substantiation are sufficient to overcome the presumption that counsel was effective, and such statements and allegations will not warrant granting postconviction relief. *Bryant v. State*, 2013 Ark. 305, ___ S.W.3d ___ (per curiam). A petitioner who asserts ineffective assistance for failure to investigate must show that further investigation would have been fruitful, and that the specific materials identified that counsel could have uncovered would have been sufficiently significant to raise a reasonable probability of a different outcome at trial. *Watson v. State*, 2012 Ark. 27 (per curiam). Thus, to prevail under *Strickland*, Watson was required to establish with facts that counsel made an error so serious that counsel was not functioning as the "counsel" guaranteed him by the Sixth Amendment. *Thornton v. State*, 2014 Ark. 113 (per curiam). In this case, aside from alleging that Boyd had a potential motive for killing Harris, Watson does not present any facts beyond speculation that Boyd had anything to do with Harris's murder. As such, this allegation is conclusory and does not provide a basis for postconviction relief.

Under this point, Watson also contends that the circuit court should have allowed an evidentiary hearing to develop further facts on this issue. However, the strong presumption in favor of counsel's effectiveness cannot be overcome by a mere possibility that an evidentiary hearing might produce evidence to bolster an allegation contained in a petition for postconviction relief. *Hickey v. State*, 2013 Ark. 237, ___ S.W.3d ___; *Nance v. State*, 339 Ark. 192, 4 S.W.3d 501 (1999). The supporting facts must appear in the petition, and the petitioner cannot rely on the possibility that facts will be elicited from witnesses if a hearing is held. *Whitmore v. State*, 299 Ark. 55, 771 S.W.2d 266 (1989). Conclusory allegations that are unsupported by facts do not provide a basis for either an evidentiary hearing or postconviction relief. *Nance, supra*. Therefore, we cannot conclude that the circuit court erred by not conducting a hearing on this matter.

Watson also submits that counsel was ineffective for failing to investigate, uncover, and utilize State's witness Sara Whipple's mental-health history to good advantage at trial. Again, relying on Boyd's statement to the police, Watson alleges that Boyd had told the police that Whipple suffered from bipolar disorder and schizophrenia and that, had trial counsel investigated this information, counsel could have mounted a more serious attack on Whipple's credibility during cross-examination.

Watson has changed his argument on appeal. Before this court, Watson contends that counsel should have investigated Whipple's mental health with an eye toward more effective cross-examination. However, in his Rule 37.1 petition, Watson alleged that counsel, armed with information concerning Whipple's mental health, was ineffective for not requesting a

mental evaluation and a hearing for the circuit court to determine Whipple's competency as a witness. In addressing the issue actually raised in the petition, the circuit court noted that a witness is presumed to be competent and ruled that Watson's bare allegation that Whipple's competence might have been questioned did not support the claim that counsel should have requested an examination and a hearing held on her competency. Moreover, the circuit court found that Watson suffered no prejudice because, even with the exclusion of Whipple's testimony, there was no reasonable probability that the outcome of trial would have been different, given the other evidence of Watson's guilt. It is clear from the record that the argument advanced on appeal is not the same issue that Watson raised in his petition. An appellant cannot change the grounds for an argument for the first time on appeal. *Mathis v. State*, 2014 Ark. 148 (per curiam); *Hogan v. State*, 2013 Ark. 223 (per curiam). We address this issue no further.

Next, Watson argues that trial counsel was ineffective for not objecting when the prosecuting attorney made improper remarks during closing argument. He contends that the prosecutor made veiled references to his Fifth Amendment right to remain silent by commenting on testimony that Watson refused to give a DNA sample and that he gave a sample only after being compelled to do so by court order. Citing *Doyle v. Ohio*, 426 U.S. 610 (1976) and this court's decision in *Bailey v. State*, 287 Ark. 183, 697 S.W.2d 110 (1985), he asserts that it is constitutional error under the Fifth Amendment for the prosecution to draw an adverse inference from the accused's invocation of his right against self-incrimination. He maintains that the prosecutor's argument with respect to withholding his DNA was

designed to focus the jury's attention on his right to remain silent.

Where it is asserted that counsel was ineffective for failing to make a motion or argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel. *Conley, supra*. This court has observed that the protections of the Fifth Amendment do not extend to demonstrative, physical tests but are intended to immunize a defendant from providing the State with evidence of a testimonial or communicative nature. *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996). This court has also held that the results of DNA testing fall within the category of demonstrative, physical tests and do not constitute testimony or a communicative act. *Talley v. State*, 2010 Ark. 357, 377 S.W.3d 222. Furthermore, we have said that the Fifth Amendment right against self-incrimination is not implicated by DNA testing. *Id*. In light of these principles, it cannot be said that an objection to the prosecutor's statements would have been successful, as the fact that Watson would not voluntarily provide a DNA sample does not speak to a violation of the Fifth Amendment. The prosecutor's remarks were otherwise based on the testimony presented at trial, and no error exists when an attorney's comment during closing argument is directly reflecting or inferable from testimony at trial. *Stewart v. State*, 2012 Ark. 444. The circuit court's rejection of this claim is not clearly erroneous.

In another issue, Watson claims that he received ineffective assistance of counsel on direct appeal. He contends that appellate counsel should have mounted a challenge to the sufficiency of the evidence because the issue was preserved for appeal, as trial counsel had

moved for a directed verdict, and because the evidence did not support a finding that he committed the murder.

A convicted defendant has the right to effective assistance of counsel on appeal in accordance with the Sixth Amendment. *Howard v. State*, 291 Ark. 633, 727 S.W.2d 830 (1987). A hallmark of appellate advocacy is the process of assessing arguments and focusing on those likely to prevail. *Malone v. State*, 294 Ark. 127, 741 S.W.2d 246 (1987). An attorney need not advance every possible argument, regardless of merit. *Howard*, *supra*; *see also Jones v. Barnes*, 463 U.S. 745 (1983); *Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992). The petitioner claiming that counsel was ineffective on appeal bears the burden of making a clear showing that counsel failed to raise a meritorious issue. *Howard*, *supra*.

This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Green v. State*, 2013 Ark. 497, ___ S.W.3d ___. In addressing this issue, we consider all of the evidence, including that which may have been inadmissible, in the light most favorable to the State. *Fondren v. State*, 364 Ark. 498, 221 S.W.3d 333 (2006). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence. *Wells v. State*, 2013 Ark. 389, ___ S.W.3d ___. Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Stevenson v. State*, 2013 Ark. 100, ___ S.W.3d ___. At issue is the charge of capital murder. A person commits this offense if, with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person. Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2013).

Viewing the evidence in the light most favorable to the State, the record of trial discloses that Harris's brother, O'taravious Harris, testified that he, Harris, and Watson spent the evening together and ended up at his and Harris's home where they drank and played pool. He said that Watson and Harris left the home and that he later spoke with them on the phone at approximately 2:15 a.m. Whipple testified that Watson knocked on her bedroom window at about 3:00 a.m. She said that Watson was behaving as though he was scared and upset and that he told her that he had killed someone. Whipple noticed that he had scratches and blood on him, and she did not allow him in the house. She recalled that, the next day, Watson was worried about the presence of DNA and that he wanted to burn his clothing. Vicki Jones testified that Watson appeared at her home at 3:50 a.m. She said that Watson was not wearing a shirt and that he was sweating. She did not let him inside. Marcus Hildreth testified that he saw Watson outside Jones's house and that he gave Watson a ride. He said that Watson appeared as though he had been in a fight and that he seemed paranoid and nervous. Hildreth stated that Watson told him that he had "burnt" someone. Hildreth also picked up Jeff Neely and Adrian Hadley at an apartment complex. Neely and Hadley testified that Watson repeated several times that he had killed someone. Hildreth also testified that Watson later told him in jail that he had struck Harris in the head with a rock.

The foregoing testimony constitutes substantial evidence to support the guilty verdict. Watson was the last person seen with Harris, and he told four persons that same morning that he had killed someone. Further, the murder weapon was a piece of concrete, and Watson confessed to Hildreth that he had used a rock to commit the murder. In light of the evidence,

SLIP OPINION

we hold that appellate counsel was not ineffective for not challenging the sufficiency of the evidence because that argument would not have succeeded on appeal.

As his last issue, Watson contends that recent decisions of the United States Supreme Court mandate that this case be remanded to the circuit court for the appointment of counsel and a new Rule 37.1 proceeding. Although Watson makes a passing reference to *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013), he places chief reliance on the opinion of *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309 (2012), to argue that he is entitled to representation of counsel in his postconviction action.

In March 2012, the United States Supreme Court decided *Martinez*, holding in part that "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial." *Martinez*, ___U.S. at ___, 132 S. Ct. at 1318. In other words, where state law bars a defendant from raising claims of ineffective assistance of trial counsel on direct appeal, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.*, 132 S. Ct. at 1320; *see also Dansby v. Norris*, 682 F.3d 711, 729 (8th Cir.), *adhered to on denial of reh'g sub nom. Dansby v. Hobbs*, 691 F.3d 934 (8th Cir. 2012). In 2013, the Supreme Court revisited the procedural-default issue in *Trevino* and stated that the *Martinez* Court had read the previous decision in *Coleman v. Thompson*, 501 U.S. 722 (1991)

"as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino*, ___ U.S. at ___, 133 S. Ct. at 1918 (alteration in original) (citing *Martinez*, ___ U.S. at ___, 132 S. Ct. at 1318–19, 1320–21). In *Paige v. State*, 2013 Ark. 432 (per curiam), this court briefly discussed the holdings of *Martinez* and *Trevino* and commented that neither decision dictates that counsel must be appointed on appeal in a postconviction proceeding.

Be that as it may, the issue Watson raises on appeal was not presented to the circuit court. In his petition for postconviction relief, Watson made a general request for the appointment of counsel. However, he did not argue, as he does on appeal, that the appointment of counsel was required under the *Martinez* decision. As we have stated, we do not consider issues that are raised for the first time on appeal. *Tornavacca v. State*, 2012 Ark. 224, 408 S.W.3d 727.

Affirmed.

*Craig Lambert*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.