Cite as 2020 Ark. 168

# SUPREME COURT OF ARKANSAS
No. CR-19-847

| | | |
|---|---|---|
| LATAVIOUS D. JOHNSON | | **Opinion Delivered:** April 30, 2020 |
| | APPELLANT | APPEAL FROM THE LEE COUNTY CIRCUIT COURT |
| V. | | [NO. 39CR12-32] |
| STATE OF ARKANSAS | | HONORABLE E. DION WILSON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Latavious D. Johnson appeals the decision of the Lee County Circuit Court denying his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.5 (2019). For reversal, Johnson argues that his trial counsel was ineffective for failing to present additional mitigation evidence during the sentencing phase of his capital-murder trial. We affirm.

## I. *Facts*

Johnson was born in Pine Bluff on October 31, 1981. His mother became ill with AIDS in 1994 and died in 1996. After her death, Johnson moved in with his father, Jimmy Johnson, who used drugs, drank heavily, had prostitutes stay overnight, and was physically abusive. Because of his chaotic family life, Johnson lived in the Vera Lloyd Presbyterian Home, a residential facility for troubled youth, from 1997 through May 1999. During that time, Johnson was diagnosed with chronic depression and was prescribed Tegretol. The

Vera Lloyd facility lacked funding, and Johnson then returned to his father's home. As a result, Johnson's counseling and treatment for the depression stopped. Meanwhile, his volatile relationship with his father continued, and Johnson was repeatedly kicked out of his father's house. In 2000, during an altercation, eighteen-year-old Johnson shot and killed his father. Johnson pleaded guilty to first-degree murder and was sentenced to a term of life imprisonment. He was serving a life sentence at the East Arkansas Regional Unit (EARU) of the Arkansas Department of Correction.

On January 20, 2012, Barbara Ester, a correctional officer at the EARU, approached Johnson about wearing contraband shoes. Johnson told Officer Ester that the shoes were not contraband. Officer Ester left and came back with Lt. Steven Lane. When the officers attempted to confiscate the shoes, Johnson stabbed Officer Ester with a shank three times, and Officer Ester was taken to the hospital where she died.

The State charged Johnson with capital murder. During his trial in the Lee County Circuit Court, Jeff Rosenzweig and Joe Perry served as Johnson's trial counsel. At trial, Johnson testified on his own behalf and admitted having stabbed Officer Ester but denied any intent to kill her. During the sentencing phase, the State, over the defense's objection, called Fanie Duke Nichols, Ester's daughter, to give victim-impact testimony. Defense counsel called Johnson's older half-sister, Keisha Rhinehart, to testify about the traumatic events that they experienced as children. The defense called no other mitigation witnesses. Neither the State nor the defense requested an Act III mental-health evaluation. Ultimately, the jury convicted Johnson of capital murder and sentenced him to death. The

circuit court ordered the circuit clerk to file a notice of appeal on Johnson's behalf pursuant to Arkansas Rule of Appellate Procedure–Criminal 10(a). We affirmed Johnson's conviction and sentence in *Johnson v. State*, 2016 Ark. 156, 489 S.W.3d 668.

Subsequently, the circuit court appointed Bill Luppen as Johnson's new counsel, and, on April 28, 2017, Johnson filed a petition for postconviction relief, pursuant to Rule 37.5. In his petition, Johnson raised five allegations of error, including a claim that trial counsel was ineffective "concerning the mitigating circumstances presented to the jury and the failure to call any witnesses but his sister at the sentencing phase."

On February 27, 2018, the circuit court held an evidentiary hearing, and three witnesses testified. Mac Carder, Johnson's attorney from his first murder trial, testified that prior to Johnson's guilty plea, he and others created a psychosocial history of Johnson's life and interviewed teachers, social workers, probation officers, family members, psychiatrists, and psychologists. Rosenzweig, Johnson's lead attorney from his second murder trial, testified that he studied Carder's extensive defense file and records; that he had discussed Johnson's mental health with various past witnesses, including two experts, and those experts agreed that Johnson did not have a mental-health diagnosis; and that he viewed Johnson's half-sister, Rhinehart, as the most credible witness to testify about Johnson's troubled childhood. Perry, Rosenzweig's co-counsel from the second trial, testified that he remembered collaborating with Rosenzweig on reviewing records and communicating regularly about the trial.

At Johnson's Rule 37.5 hearing, the circuit court received an exhibit containing information about Johnson's past. The court then ordered a mental-health evaluation to be conducted at the Arkansas State Hospital. After inquiring several times about the evaluation report, the court received a letter, dated April 9, 2019, that Johnson did not want to participate in an evaluation because he believed it was a "stalling" strategy. On July 2, 2019, the circuit court received a letter from Luppen stating, "I spoke with Latavious Johnson this day. This is to advise that Mr. Johnson wants you to rule on the 37.5 petition and that a [mental-health] hearing is not necessary on this issue." On July 22, 2019, the circuit court entered an order denying Johnson's petition for Rule 37.5 relief. Johnson timely filed his notice of appeal with this court.

## II. *Mitigation*

For his sole point on appeal, Johnson argues that the circuit court erred when it denied his claim that he received ineffective assistance of counsel during the sentencing phase. Specifically, Johnson argues that counsel did not adequately present additional mitigation evidence.[1] He contends that counsel should have called the witnesses that Carder had interviewed and that these witnesses could have testified about his "chaotic and turbulent life" prior to his incarceration. He also asserts that Rosenzweig should have

---

[1]Johnson raised four other claims in his Rule 37.5 petition, and the circuit court denied those claims. He has not appealed the circuit court's rulings on those four claims, and they now are considered abandoned. *See Springs v. State*, 2012 Ark. 87, at 2 n.1, 387 S.W.3d 143, 147 n.1.

4

introduced the decades-old mental-health records from his first trial as additional mitigation evidence.

When reviewing a circuit court's ruling on a petitioner's request for Rule 37.5 relief, this court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *Kemp v. State*, 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been made. *Id.*, 60 S.W.3d at 406.

When considering an appeal from a circuit court's denial of postconviction relief on a claim of ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), the circuit court clearly erred in holding that counsel's performance was not ineffective. *Sparkman v. State*, 373 Ark. 45, 281 S.W.3d 277 (2008). In making this determination, we must consider the totality of the evidence. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006).

The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-pronged standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel"

5

guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Springs*, 2012 Ark. 87, 387 S.W.3d 143. A court must indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*, 387 S.W.3d 143.

Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Id.*, 387 S.W.3d 143. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Howard*, 367 Ark. 18, 238 S.W.3d 24. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*, 238 S.W.3d 24. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*, 238 S.W.3d 24. "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

The constitutional guarantee of effective assistance of counsel extends to the sentencing phase of the defendant's trial. *Coulter v. State*, 343 Ark. 22, 31 S.W.3d 826 (2000). Trial counsel's failure to investigate and present substantial mitigating evidence during the sentencing phase of a capital-murder trial can constitute ineffective assistance of

counsel. *Reams v. State*, 2018 Ark. 324, 560 S.W.3d 441. To demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness or witnesses, the outcome of the trial would have been different. *Id.*, 560 S.W.3d 441.

The decision of trial counsel to call a witness is generally trial strategy and outside the purview of Rule 37. *Id.*, 560 S.W.3d 441. The decision to call or not to call a particular witness is largely a matter of professional judgment. *Wertz v. State*, 2014 Ark. 240, 434 S.W.3d 895. The fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Id.*, 434 S.W.3d 895. To review the circuit court's order and correctly determine this issue, we must look at all the evidence adduced at trial and at the Rule 37 hearing. *Howard*, 367 Ark. 18, 238 S.W.3d 24.

With this precedent in mind, we turn to the case at bar. The circuit court ruled,

> 17. Mr. Johnson's fourth point is that he seeks relief and requests that this Court find that he received ineffective assistance of counsel concerning the mitigating circumstances presented to the jury and the failure of his defense to call any witnesses other than his sister at the sentencing phase.

> 18. A charge of inadequate representation can prevail only if the acts or admissions of an accused attorney results in making the proceeding a farce and mockery of justice shocking the conscious [sic] of the court or the representation is so patently lacking in competency or adequacy that it becomes the duty of the court to become aware of and correct it.

> 19. Mr. Johnson must show that the assistance or advice that he received was not within the range of competence demanded from attorneys in criminal cases.

> . . . .

7

25. The Court has reviewed the petitioner's ineffective assistance of counsel's [sic] claim. Based on all the evidence and testimony presented to the Court during the Rule 37.5 hearing, the Court cannot find that the counsel for the petitioner was ineffective as defined by *Strickland v. Washington*, *supra*, and the Court finds that there is no fact that substantiates that the outcome would have been different if the petitioner had presented the thirty-one witnesses to testify for the defendant in the mitigation phase of the trial.

26. The Court finds that there is no reasonable probability absent the professional judgment decision that the jury would have concluded that the balance of aggravated and mitigated circumstances did not warrant death. The petitioner has simply failed to meet his burden.

We agree with the circuit court's rulings. First, Rosenzweig made a reasonable, strategic decision to introduce mitigation evidence of Johnson's childhood experiences through Rhinehart's testimony. At the Rule 37.5 evidentiary hearing, Rosenzweig testified that he was aware that Johnson had pleaded guilty to first-degree murder ten years ago and that his prior murder offense was "a major—a cloud hanging over the case." Rosenzweig testified that he procured Carder's file on Johnson's 2000 capital-murder case and studied Carder's witness-interview notes. According to Rosenzweig, he and his mitigation specialist interviewed potential witnesses who knew Johnson before he was incarcerated. But Rosenzweig determined that Johnson's half sister, Rhinehart, whom he described as "an extremely well spoken lady," was the best witness to testify about Johnson's troubled childhood and the traumatic experiences that they faced as children. Rosenzweig determined that she would come across "quite well" to the jury and would be a much better witness than other family members whom he described as not "particularly helpful." Rosenzweig surmised that Rhinehart's testimony was Johnson's best chance at receiving a

life sentence. Perry also testified that he and Rosenzweig considered Rhinehart their "primary witness" because there was "quite a bit of negative material" about Johnson.

Next, Rosenzweig made a strategic decision not to introduce Johnson's outdated mental-health evidence because the State could have rebutted it with potentially damaging evidence. Rosenzweig studied Carder's defense file, Johnson's mental-health records, and Johnson's prison records. He testified that he hired two experts—Dr. George Woods, a psychiatrist, and Dr. Stacy Wood, a neuropsychologist—who both opined that Johnson did not have a mental-health diagnosis and had been competent to stand trial. Rosenzweig testified that "[i]t was pretty obvious that Mr. Johnson was not an *Atkins* [*v. Virginia*, 536 U.S. 304 (2002)] case[.]" He further stated that, as defense counsel, he did not want "to have a situation where . . . we would end up opening the door . . . to the less savory aspects of Mr. Johnson's prison record." Perry also testified that Johnson's prison records contained "some negative notations."

In light of counsel's testimony and our review of the record, we conclude that trial counsel's performance was not deficient. Counsel's decisions concerning mitigation evidence included matters of trial strategy and tactics. This court has explained that matters of trial strategy and tactics fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Noel v. State*, 342 Ark. 35, 41– 42, 26 S.W.3d 123, 127 (2000). Thus, we hold that the circuit court did not err in denying Johnson's petition for postconviction relief. Because we hold that the performance of

Johnson's counsel was not deficient, we need not address the prejudice requirement under *Strickland*, 466 U.S. at 687. Accordingly, we affirm.

Affirmed.

*Bill Luppen*, for appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.