Cite as 2020 Ark. 410

# SUPREME COURT OF ARKANSAS

No. CR-20-86

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered:** December 10, 2020 |
| BRAD HUNTER SMITH | APPELLANT | |
| V. | | APPEAL FROM THE CLEVELAND COUNTY CIRCUIT COURT [NO. 13CR-16-3] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE DAVID W. TALLEY, JUDGE |
|  |  | AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Brad Hunter Smith appeals the circuit court's denial of his petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.5 (2019). For reversal, Smith argues that the circuit court erred by (1) denying his amended petition based on ineffective assistance of counsel, (2) not considering his second amended petition, (3) allowing the jury to consider at sentencing an aggravating circumstance that was not supported by sufficient evidence, and (4) making insufficient findings of fact. We affirm in part, reverse in part, and remand for resentencing.

Smith was charged on January 7, 2016, with capital murder, kidnapping, and abuse of a corpse. Evidence at trial demonstrated that Cherrish Allbright went missing on

December 3, 2015. On December 10, Smith's friend, Josh Brown, confessed to his involvement in Allbright's disappearance. Brown testified that he called Allbright on December 3 under the pretenses of wanting to smoke marijuana. Brown picked up Allbright in Jonathan Guenther's truck and drove to a field where Smith and Guenther were hiding behind trees. After Allbright exited the truck, Smith shot her through the back with a crossbow bolt. Allbright attempted to reenter the truck, but Smith ordered her out of the truck and told her and Brown to kneel on the ground. Smith then struck Allbright in the back of the head with a wooden bat. The trio placed Allbright's body onto a trailer attached to a four-wheeler and transported it to a wooded area near Smith's residence for burial. Based on information that Brown provided, authorities found Allbright's body buried in a shallow grave. An autopsy revealed that Allbright died of blunt force injuries and the presence of a "[f]ive-week +/- gestational age embryo[.]" The jury convicted Smith on all charges.

At the sentencing phase, the circuit court allowed the jury to consider as an aggravating factor whether, pursuant to Arkansas Code Annotated section 5-4-604(4) (Repl. 2013), "[i]n the commission of the capital murder, Brad Hunter Smith knowingly created a great risk of death to a person other than the victim or knowingly caused the death of more than one person (Cherrish F. Allbright and unborn child) in the same criminal episode." The jury found beyond a reasonable doubt that the circumstance existed. The jury also found beyond a reasonable doubt that the murder was committed in an especially cruel and depraved manner pursuant to Arkansas Code Annotated section 5-4-604(8) and that the aggravating factors outweighed the mitigating factors. The jury therefore sentenced Smith to

death for Allbright's murder. The jury also sentenced Smith to twenty years' imprisonment for kidnapping and ten years' imprisonment for abuse of a corpse. He challenged only his death sentence on direct appeal, and we affirmed. *Smith v. State*, 2018 Ark. 277, 555 S.W.3d 881.

Smith filed a petition for postconviction relief pursuant to Rule 37.5 on March 19, 2019, and an amended petition on May 29, 2019. In his amended petition, Smith alleged that (1) trial counsel were ineffective because they abandoned their objection to instructing the jury that the death of Allbright's unborn child could be considered an aggravating factor for sentencing purposes; (2) trial counsel were ineffective because they failed to present evidence that Smith had no criminal history; and (3) because these issues were essential to the jury's consideration of the death penalty, the circuit court erred by failing to bring them to the jury's attention. The circuit court held a hearing on the amended petition on July 17, 2019. On August 27, 2019, after the hearing, but before the circuit court ruled on the amended petition, Smith filed a second amended petition. That petition added two additional claims: (1) that trial counsel rendered ineffective assistance by failing to investigate the viability of Allbright's unborn child and its cause of death, and (2) that defining Allbright's unborn child as a "person" in the guilt phase of the trial confused the jury and violated his due-process rights. On November 1, 2019, the circuit court entered an order denying both petitions. The circuit court found the claims in the first amended petition to be without merit. The circuit court rejected the claims in the second amended petition because Smith filed the petition without leave of the court as required by Arkansas Rule of

Criminal Procedure 37.2(e). Alternatively, the circuit court found that the claims in the second amended petition were meritless. Smith filed a timely notice of appeal.

When reviewing a circuit court's ruling on a petitioner's request for Rule 37.5 relief, this court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *Johnson v. State*, 2020 Ark. 168, 598 S.W.3d 515. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been made. *Id.*

Claims of ineffective assistance of counsel are assessed under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Roberts v. State*, 2020 Ark. 45, 592 S.W.3d 675. In asserting ineffective assistance of counsel under *Strickland*, the petitioner first must demonstrate that counsel's performance was deficient. *Id.* This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Watson v. State*, 2014 Ark. 203, at 3, 444 S.W.3d 835, 838–39. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55.

4

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Roberts*, 2020 Ark. 45, 592 S.W.3d 675. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Strickland*, 466 U.S. 668. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* The "outcome of the trial" refers not only to the finding of guilt or innocence but also to possible prejudice in sentencing. *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143. In making a determination of ineffective assistance of counsel, the totality of the evidence must be considered. *Id.* Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Sales v. State*, 2014 Ark. 384, 441 S.W.3d 883.

This appeal requires us to interpret statutes crafted by the General Assembly. We review issues involving statutory construction de novo, as it is for this court to decide the meaning of a statute. *State v. Colvin*, 2013 Ark. 203, 427 S.W.3d 635. Significantly, penal statutes are to be strictly construed with all doubts resolved in favor of the defendant. *Williams v. State*, 364 Ark. 203, 217 S.W.3d 817 (2005). Strict construction means narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Metzner v. State*, 2015 Ark. 222, 462 S.W.3d 650. However, even a penal statute must not be construed so strictly as to defeat the obvious intent of the legislature. *Williams*, *supra*. Additionally, in construing any statute, we place it beside other statutes relevant to the

5

subject matter in question and ascribe meaning and effect to be derived from the whole. *Singleton v. State*, 2009 Ark. 594, 357 S.W.3d 891; *Bush v. State*, 338 Ark. 772, 2 S.W.3d 761 (1999). Statutes relating to the same subject must be construed together and in harmony, if possible. *Jester v. State*, 367 Ark. 249, 239 S.W.3d 484 (2006).

The jury convicted Smith of capital murder and sentenced him to death. A person commits capital murder if "with the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2013). Capital murder is punishable by death or life imprisonment without parole. Ark. Code Ann. § 5-10-101(c)(1)(A)(i)–(ii). To impose a death sentence, a jury must unanimously find beyond a reasonable doubt that an aggravating circumstance exists, that aggravating circumstances outweigh any mitigating circumstances, and that the aggravating circumstances justify a sentence of death. Ark. Code Ann. § 5-4-603 (Repl. 2013).

This appeal concerns the interplay of a definitional statute and a sentencing statute. Arkansas Code Annotated section 5-1-102 contains definitions "[a]s used in the Arkansas Criminal Code." In relevant part, that section provides that:

> (13)(A) "Person", "actor", "defendant", "he", "she", "her", or "him" includes:
>
> (i) Any natural person; and
>
> (ii) When appropriate, an organization as defined in § 5-2-501.
>
> (B)(i)(a) As used in §§ 5-10-101 – 5-10-105, "person" also includes an unborn child in utero at any stage of development.
>
> (b) "Unborn child" means offspring of human beings from conception until birth.

Section 5-1-102 contains two distinct definitions of "person" that are relevant here. One definition, section 5-1-102(13)(A)(i), applies throughout the criminal code, and another, section 5-1-102(13)(B), applies only to the homicide statutes found at sections 5-10-101 – 5-10-105.[1] This distinction is critical because Arkansas Code Annotated section 5-4-604 is also at issue in this appeal. Section 5-4-604 identifies aggravating factors that a jury may consider when weighing the punishment to impose after finding a defendant guilty of capital murder. In relevant part, that section provides:

> An aggravating circumstance is limited to the following:
>
> . . . .
>
> (4) The person in the commission of the capital murder knowingly created a great risk of death to a person other than the victim or caused the death of more than one (1) person in the same criminal episode[.]

Ark. Code Ann. § 5-4-604(4).

With these authorities in mind, we look initially to Smith's argument that his trial attorneys were ineffective when they abandoned their argument that the death of an unborn child cannot be used as an aggravating factor for capital-murder sentencing.[2] The question presented to this court is not whether Smith committed a particularly heinous crime or

---

[1]In 1999, the General Assembly adopted Act 1273, The Fetal Protection Act, which amended section 5-1-102 to include "unborn child" within the definition of a "person" for homicide offenses only. *See* Michael S. Robbins, Comment, *The Fetal Protection Act: Redefining "Person" for the Purposes of Arkansas' Criminal Homicide Statutes*, 54 Ark. L. Rev. 75 (2001) (discussing the historical treatment of unborn children in the law).

[2]Smith does not allege error with respect to the aggravating circumstance that the murder was committed in an especially cruel and depraved manner.

whether he deserves death for his transgressions. Rather, the question we must answer is whether the General Assembly properly provided for the "unborn child" definition of "person" to be applied when an aggravating factor in capital-murder sentencing is being considered. The answer is no. The legislature did not permit the section 5-1-102(13)(B) definition of a "person" to apply in the determination of an aggravating factor for capital-murder sentencing. In fact, the General Assembly specifically restricted the use of this definition. This we cannot ignore.

Before the trial, the State notified the defense that it intended to present three aggravating factors to the jury during the penalty phase of the trial: (1) that the murder was committed in an especially cruel and depraved manner, (2) that Smith knowingly created a great risk of death to a person other than Allbright in the commission of the murder, and (3) that Smith knowingly caused the death of more than one person in the same criminal episode. The State proposed the last two aggravating factors because Allbright was pregnant. On July 27, 2017, during the trial but before sentencing, defense counsel filed a motion objecting to the death of a second "person," or the creation of a great risk of death to another "person," being considered by the jury as an aggravating factor. Counsel argued that, because the General Assembly did not apply the section 5-1-102(13)(B) definition of a "person" to section 5-4-604, submission of aggravating circumstances involving another "person" would be improper. However, Smith's trial counsel abandoned the argument at the sentencing stage and agreed that an unborn child could be considered a "person" for purposes of the aggravating circumstances found in section 5-4-604(4).

8

In denying Smith's Rule 37.5 petition on this point, the circuit court determined that section 5-1-102 contains "definitions to be used in the Arkansas Criminal Code," and because section 5-4-604 is part of the criminal code, the definition of a "person" found in section 5-1-102(13)(B) applies to section 5-4-604. However, the circuit court failed to recognize that the General Assembly expressly and specifically confined the application of section 5-1-102(13)(B) to the homicide statutes and made no provision to extend its definition to sentencing. A fundamental principle of statutory construction is the maxim *expressio unius est exclusio alterius*, meaning that the express designation of one thing may properly be construed to mean the exclusion of another. *Buonauito v. Gibson*, 2020, Ark. 352, 609 S.W.3d 381. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 107 (2012) (describing the maxim as the negative-implication canon). The fact that the General Assembly expressly applied the definition of "person" found in section 5-1-102(13)(B) to the homicide statutes but not to other parts of the criminal code compels us to conclude that the section 5-1-102 (13)(B) definition of a "person" must be confined to the homicide statutes. If the General Assembly had intended the section 5-1-102(13)(B) definition to apply to section 5-4-604, it would have included language to that effect. *See Bolin v. State*, 2015 Ark. 149, 459 S.W.3d 788.

Moreover, the circuit court failed to construe these criminal statutes strictly and in Smith's favor as we are required to do, *see Williams*, *supra*, when it extended the section 5-1-102(13)(B) definition of a person to a sentencing statute. Simply put, the General Assembly has obviously created distinct definitions of a "person," and has explicitly restricted the

application of the definition of a person found in section 5-1-102(13)(B). [3] It is not this court's role to act as a legislative body and create a sentencing scheme that does not exist. *See Harris v. Hutchinson*, 2020 Ark. 3, 591 S.W.3d 778 (explaining that the enactment of legislation is a legislative function). It is also not the role of the courts to add words to a statute to convey a meaning that is not there. *3 Rivers Logistics, Inc. v. Brown-Wright Post No. 158 of Am. Legion, Dep't of Ark., Inc.*, 2018 Ark. 91, 548 S.W.3d 137. We must also give effect to every part of the statute, and here, that includes the limiting language. *See id.* Thus, the circuit court erred in presenting to the jury the death of Allbright's unborn child as an aggravating factor, and Smith's trial attorneys were ineffective when they abandoned this argument. *See id.*[4]

Our determination that Smith's trial counsel was ineffective does not end our task. We must next consider whether there is a reasonable probability that the fact-finder's decision would have been different absent counsels' errors. *Strickland*, 466 U.S. 668. In this

---

[3]Other portions of our criminal code suggest that the General Assembly is aware of the limited application of section 5-1-102(13)(B). We note that the General Assembly has chosen to specifically include protections for unborn children in our first-degree-battery statute. Ark. Code Ann. § 5-13-201(5) (Supp. 2019). Likewise, our legislature has provided that in certain circumstances, a pregnant woman is justified in using physical or deadly force against another person to protect her unborn child. Ark. Code Ann. § 5-2-615 (Repl. 2013).

[4]*See also Arms v. State*, 2015 Ark. 364, 471 S.W.3d 637. In *Arms*, a mother was charged with introducing a controlled substance into the body of another person in violation of Arkansas Code Annotated section 5-13-210(b)(c)(1). We concluded that the definition in section 5-1-102(13)(B) did not expressly apply to section 5-13-210, and that "the express inclusion of an unborn child with regard to homicide offenses excludes a similar inclusion for nonhomicide offenses." Although the cases are not identical, the *Arms* rationale is instructive here.

case, the jury found the presence of two aggravating factors. Based on our decision today, the jury should have considered only one, that the murder was committed in an especially cruel or depraved manner. We cannot read the jury's mind, and the lack of specificity as to the weight it gave to each aggravating factor is sufficient to undermine our confidence in the outcome of the sentencing. *See Strickland*, 466 U.S. 668. We therefore reverse the circuit court's denial of Smith's petition with respect to his death sentence and remand for resentencing.

Smith's points regarding his attorneys' failure to present evidence of his lack of a significant criminal history and their failure to investigate the viability or cause of death of Allbright's unborn child are rendered moot. Also moot are his arguments relating to the circuit court's duty to advise the jury that Allbright's unborn child was not a "person" for purposes of Arkansas Code Annotated section 5-4-604, that he had no significant criminal history, and his assertions as to evidence of the unborn child's viability or cause of death and the circuit court's fact-finding responsibilities.[5]

Affirmed in part, reversed in part, and remanded for resentencing.

Special Justice DARREN O'QUINN concurs.

---

[5]Smith briefly mentioned on appeal that the circuit court referenced the section 5-1-102(13)(B) definition of a "person" in reading instructions to the jury at the guilt phase of the trial and argues that this confused the jury, violated his due-process rights, and requires reversal of his conviction. We see no clear error in the circuit court's denial of this point. Moreover, Smith has not developed an argument on this issue as part of his ineffective-assistance claim, and we will not do so for him. *Sims v. State*, 2015 Ark. 363, 472 S.W.3d 107.

WOOD and WOMACK, JJ., dissent.

WYNNE, J., not participating.

**DARREN O'QUINN, Special Justice, concurring.** I commend the majority's commitment to the strict construction of the statutes at issue, and I fully join the opinion. I write separately to underscore the importance of addressing the circuit court's error at this early stage. Smith was sentenced to death, and there is a great likelihood that the issue surrounding the aggravating factors would be raised again years later in anticipation of his execution. *See, e.g., Wertz v. State*, 2016 Ark. 249, 493 S.W.3d 772. According to a September 2020 report from the United States Department of Justice, between 1973 and 2018, more than 9,500 offenders were sentenced to death in the United States. However, only 1,490 executions were recorded. *See* Dept. of Justice, Bureau of Justice Statistics, T. Snell, Capital Punishment, 2018—Statistical Tables (Table 13, Appx. Table 3) (rev. Sept. 2020). Remarkably, for that thirty-five-year period, about eighty-four percent of death-row inmates still have not received their punishment. It is troubling to consider the effect that long delays must have upon victims' families and the justice they seek. The people of Arkansas deserve to have sentences carried out as expeditiously as possible. Therefore, it is incumbent upon this court to ensure that the sentences imposed are not only lawful, but also less vulnerable to eleventh-hour appeals such as motions to recall the mandate or other petitions for extraordinary relief. As this court has often stated, death is different, *see, e.g., Liggins v. State*, 2016 Ark. 432, 505 S.W.3d 191, and this is all the more reason to get it right early in the appellate process.

RHONDA K. WOOD, **Justice, dissenting.** The Arkansas General Assembly determined that when considering criminal homicides, as a matter of public policy, committing an offense against a person that causes the death of "an unborn child in utero at any stage of development"[1] is causing the death of a person.[2] The majority holding that, within this narrow homicide statutory scheme, an "unborn child" is a person in one context and not a person in another is an artificial distinction. I believe this strained application of statutory construction is in error, and for this reason, I dissent.

This court has explained that "legislative acts relating to the same subject or having the same purpose must be construed together and in harmony if possible."[3] This is the whole-text canon, which simply requires that courts not isolate a particular statute and instead place it in both physical and logical context to its related parts.[4] And we "will not interpret a statute to yield an absurd result that defies common sense."[5]

Here, the State could have charged Smith with the capital murders of both Cherrish Allbright and her "unborn child." Yet, according to the majority, when the State chose to

---

[1]Referred to herein more concisely as "unborn child."

[2]Ark. Code Ann. § 5-1-102(13)(B)(i). The General Assembly also lists exceptions in section 13(B)(ii) for certain medical procedures and abortion. *Id.*

[3]*Johnson v. State*, 331 Ark. 421, 425, 961 S.W.2d 764, 766 (1998).
[4]*See* Antonin Scalia & Bryan A. Garner, *Reading Law: An Interpretation of Legal Texts*, 167–69 (2012).

[5]*State v. Owens*, 370 Ark. 421, 426, 260 S.W.3d 288, 292 (2007); *Montoya v. State*, 2010 Ark. 419, at 2.

charge Smith with only the capital murder of Allbright, it could not submit the death of her "unborn child" as an aggravating factor––because the "unborn child" was no longer a person. Incongruently, the majority would find that Smith could kill Allbright and cause the death of an additional person, her "unborn child," and receive capital murder sentences for both, yet the death of her "unborn child," could not be used as an aggravating factor for the sentence. This interpretation violates the whole-text canon. Section 5-10-101, relating to capital murder, and section 5-4-604, relating to the aggravating factors for capital murder, are related legislative acts involving the same subject, and we must interpret them in harmony so that absurd results are not yielded.[6]

I submit it is absurd and inharmonious to hold that when the General Assembly defined a person to include an "unborn child" for a death in a capital-murder statute that it did not intend that definition to apply to a death of a person in the capital-murder aggravating factors. Counsels' failure to object to the aggravating factor was not deficient and did not rise to the level of depriving Smith of his Sixth Amendment right to counsel. Smith did "cause the death of more than one (1) person in the same criminal episode" as defined in Arkansas Code Annotated section 5-4-604.

For this reason, I dissent.

WOMACK, J., joins.

*Bill Luppen*, for appellant.

---

[6]*See Johnson*, 331 Ark. at 425, 961 S.W.2d at 766.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.