Cite as 2015 Ark. 167

# SUPREME COURT OF ARKANSAS

No. CR-14-465

| | | |
|---|---|---|
| ROGER LEMASTER | | **Opinion Delivered** April 16, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. CR2009-310] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE BARBARA ELMORE, JUDGE |
| | | AFFIRMED. |

## RHONDA K. WOOD, Associate Justice

Roger Lemaster appeals the denial of his petition for postconviction relief under Arkansas Rule of Criminal Procedure 37. Lemaster alleges that he received ineffective assistance of counsel because his attorney failed to play an audio recording, which Lemaster contends would have changed the outcome of his trial. We find no error in the circuit court's ruling and affirm the denial of Lemaster's petition.

### I. *Relevant Facts*

Lemaster was convicted of raping his stepdaughter, and his conviction was affirmed by the court of appeals. *Lemaster v. State*, 2011 Ark. App. 128. Lemaster then filed a pro se petition for relief under Arkansas Rule of Criminal Procedure 37. Lemaster's petition alleged a number of grounds for relief, and the circuit court denied the petition without a hearing. We affirmed the majority of the circuit court's ruling, but reversed and remanded for an evidentiary hearing regarding the issue that forms the basis for the present appeal, i.e., whether Lemaster received ineffective assistance of counsel when his attorney failed to

introduce an audio recording of a message left for Lemaster by his stepdaughter and her mother, in which they seemingly taunt Lemaster about the rape charge and use a homosexual epithet to refer to him. *Lemaster v. State*, 2013 Ark. 449.

During the hearing on remand, the recording was played and Lemaster's trial counsel testified about why the recording was omitted from trial. The recording revealed the following conversation:

FEMALE 1: Roger, you're a faggot. (laughter)

FEMALE 2: He's not getting them back.

FEMALE 1: I know, but –

FEMALE 2: (inaudible) say anything.

FEMALE 1: I just wanted to tell you in case you do ever get it back. Maybe they'll give it to you when you're in jail. Hope so. Have a good day.

Lemaster's attorney then testified that he was aware of the recording before trial and that he was prepared to use the recording depending on how the victim did on the stand. He testified that he made a strategic choice not to introduce the recording, because he felt that the victim's testimony had made it abundantly clear that she hated Lemaster. He explained that he considered the recording to be superfluous and that he believed he had established the point that the victim despised Mr. Lemaster. He further explained that the court had admonished him several times to move on from that point and that he was concerned he would alienate the jury if he continued to belabor it.

The circuit court again denied Lemaster's petition, holding that trial counsel's decision was a matter of strategy and trial tactics. Lemaster now appeals that ruling.

SLIP OPINION

## II. *Standard of Review*

We do not reverse the grant or denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Sales v. State*, 2014 Ark. 384, 441 S.W.3d 883. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

We assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. Under this standard, the petitioner must first show that counsel's performance was deficient. *Id.* This requires a showing that counsel made errors so serious that counsel deprived the petitioner of the counsel guaranteed to the petitioner by the Sixth Amendment. *Id.* Second, the deficient performance must have resulted in prejudice so pronounced as to have deprived the petitioner a fair trial whose outcome cannot be relied on as just. *Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992). Both showings are necessary before it can be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the petitioner has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.* Even if counsel's conduct is shown to be professionally

SLIP OPINION

unreasonable, the judgment will stand unless the petitioner demonstrates that the error had a prejudicial effect on the actual outcome of the proceeding. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55. The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, or in other words, that the decision reached would have been different absent the errors. *Id.* A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.* In making this determination, the totality of the evidence before the fact-finder must be considered. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000).

## III.  *Analysis*

Lemaster argues that the case against him turned on the victim's credibility and that the recording was a valuable tool that could have been used to impeach that credibility. Lemaster further argues that the recording illustrates the victim and her mother laughing and ridiculing Lemaster about the charges against him and implying that he is a homosexual, thereby undermining the female victim's claim that Lemaster had raped her. According to Lemaster, it was absolutely critical that defense counsel do anything and everything to bring the victim's credibility into question so as to create reasonable doubt among the jury and that failure to play the recording and cross-examine the victim about her comments on the recording amounted to ineffective assistance.

We cannot agree with Lemaster's arguments. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Bryant v. State*, 2013 Ark. 305, at 7, 429 S.W.3d 193, 199 (per curiam). Furthermore, counsel is allowed great leeway in

making strategic and tactical decisions." *Id*. at 5, 429 S.W.3d at 198; *see also Deason v. State*, 263 Ark. 56, 61, 562 S.W.2d 79, 82 (1978) ("[D]efense counsel has a broad latitude in exercising his judgment in his client's behalf.").

This court has held that the extent to which a witness is questioned is a matter of trial tactics and does not justify Rule 37 relief. *Hicks v. State*, 289 Ark. 83, 86, 709 S.W.2d 87, 89 (1986). In *McDaniel v. State*, the petitioner argued that his trial attorney "lacked the customary skill of a competent attorney in the area of witness examination" and provided examples of questions that should have been asked, which would have resulted in the presentation of favorable evidence. 282 Ark. 170, 173, 666 S.W.2d 400, 402–03 (1984). We explained that matters of trial strategy are "open to debate by experienced counsel and are not grounds for relief under our postconviction rule." *Id*. at 172, 666 S.W.2d at 401. We then held that questioning of witnesses is a matter of trial tactics and strategy and that Rule 37 does not provide a forum for dissecting counsel's examination of a witness. *Id*. at 173, 666 S.W.2d at 403.

The result was the same in *Nelson v. State*, 344 Ark. 407, 39 S.W.3d 791 (2001). Nelson claimed that his attorney should have contradicted the witness who testified against him by producing evidence that it had rained on the night in question after the witness testified that it had not rained. *Id*. at 414, 39 S.W.3d at 796. Nelson argued that the contradiction would have detracted from the witness's credibility, making it less likely that the jury would believe the witness's testimony that Nelson had committed a crime. *Id*. We rejected this argument, explaining that "[t]he manner of questioning a witness is by and large a very subjective issue about which different attorneys could have many different

approaches," and tactical decisions are not grounds for postconviction relief. *Id.* We further explained that it was the jury's job to determine the credibility of the witnesses and that there was no indication that the jury would have resolved the credibility determination in Nelson's favor, even if the witness's testimony had been contradicted. *Id.*; *see also Wainwright*, 307 Ark. at 579, 823 S.W.2d at 454 (holding that mere allegations that the jury would have been swayed by additional testimony are conclusory).

Lemaster's case is no different than those just discussed. The record reveals that Lemaster's attorney thoroughly cross-examined the victim and even got her to admit that she had lied on several occasions in her previous statements. Lemaster's attorney, however, made a reasonable professional judgment that continued and prolonged attacks to the young girl's credibility would alienate the jury and result in a negative outcome for Lemaster. Lemaster now second-guesses counsel's strategic decision by arguing that counsel should have used the recording in addition to the cross-examination about the victim's inconsistent statements to further impeach her credibility. As our cases clearly demonstrate, the extent to which a witness is questioned, the specific manner of questioning, and the tactical considerations attending those issues do not warrant relief under Rule 37. Accordingly, the circuit court's denial of Lemaster's petition was not clearly erroneous.

Affirmed.

*Craig Lambert*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.