SLIP OPINION

Cite as 2015 Ark. 258

# SUPREME COURT OF ARKANSAS

No. CR-14-845

| | | |
|---|---|---|
| PAMELA HOOKS | | **Opinion Delivered** June 4, 2015 |
| | APPELLANT | |
| V. | | PRO SE APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-10-4212] |
| STATE OF ARKANSAS | | HONORABLE JAMES LEON JOHNSON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**PER CURIAM**

In 2010, John Davis collapsed during a physical altercation with Pamela Hooks and died later that same day. In 2012, Hooks was charged with first-degree murder in the death. At trial, a primary issue was Davis's ill health, which included a preexisting heart condition involving severe blockage of a main artery.

The forensic pathologist who performed the autopsy on Davis testified that he had sustained sixty-eight separate injuries—cuts, scratches, and multiple superficial stab wounds, some of which were consistent with defensive injuries. Scissors that were recovered from the scene of the struggle were stained with the blood of both Davis and Hooks. The pathologist further testified that, while Davis's injuries in themselves were not life threatening in a healthy person, he classified the manner of death as homicide caused by complications of cardiac arrest brought on by the physical struggle with Hooks and arterial sclerotic cardiovascular disease.

Hooks testified that Davis had attacked and injured her and that she had fought back with some broken glass and a piece of broken plate as she tried to free herself from his grasp.

She also testified that she and Davis had an open sexual relationship that sometimes turned violent and that she had entered a plea of nolo contendere in 2008 to domestic battering arising from a prior fight with Davis in which Davis sustained serious multiple lacerations to his face. There was also proof presented that Hooks had entered pleas of guilty in the following cases, in all of which Davis was the victim: in 1991, first-degree battery and second-degree battery; in 1995, aggravated assault; in 1996, second-degree battery; in 2003, domestic battering.

After hearing all the testimony, the jury found Hooks guilty of the lesser-included offense of second-degree murder, and she was sentenced as a habitual offender to 564 months' imprisonment. The Arkansas Court of Appeals affirmed, concluding that, considering the record as a whole and applicable precedent, substantial evidence supported the jury's finding that Hooks acted with the purpose to seriously injure Davis. The substantial evidence noted by the court included the use of scissors, which can be used as a deadly weapon, and the cumulative number of injuries inflicted to vital portions of the victim's anatomy that give rise to the inference that serious harm was intended. The court of appeals also noted that the jury was not required to believe Hooks's account of the fight in which she acted in self-defense. *Hooks v. State*, 2013 Ark. App. 728, 431 S.W.3d 333.

After the judgment was affirmed, Hooks timely filed in the trial court a verified, pro se petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2012). The trial court denied the petition without holding an evidentiary hearing, and Hooks brings this appeal.

Hooks raised a number of issues in her petition for Rule 37.1 relief. On appeal, she

SLIP OPINION

raises only some of the issues argued below. Those claims argued below, but not in this appeal are considered abandoned. *Carter v. State*, 2015 Ark. 166, ___ S.W.3d ___.

Hooks first urges this court to reverse the trial court's order on the ground that a hearing should have been held on her claims of ineffective assistance of counsel. Rule 37.3 of the Arkansas Rules of Criminal Procedure requires an evidentiary hearing in a postconviction proceeding unless the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief. *See Beverage v. State*, 2015 Ark. 112, ___ S.W.3d ___. If the files and the record conclusively show that the petitioner is not entitled to relief, the trial court is required to make written findings to that effect, "specifying any parts of the files, or records that are relied upon to sustain the court's findings." Ark. R. Crim. P. 37.3(a) (2012). The trial court here made the required findings. As it could do so conclusively based on the files and record in the case, the trial court did not err in ruling on the petition without a hearing.

When reviewing a decision of a trial court to deny relief on the issue of whether counsel's representation was effective, this court has held that it will reverse the trial court's decision granting or denying postconviction relief only when that decision is clearly erroneous. *Lemaster v. State*, 2015 Ark. 167, ___ S.W.3d ___. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. When considering an appeal from a trial court's denial of a Rule 37.1 petition based on ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme

SLIP OPINION

Court in *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court clearly erred in holding that counsel's performance was not ineffective. *Taylor v. State*, 2013 Ark. 146, 427 S.W.3d 29.

The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Holloway v. State*, 2013 Ark. 140, 426 S.W.3d 462. A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Smith v. State*, 2015 Ark. 165, ___ S.W.3d ___. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Lemaster*, 2015 Ark. 167, ___ S.W.3d ___.

Hooks argues that her attorney at trial failed to "more thoroughly advise her in plea bargaining." As support for the allegation, she states that she "requested five years from the

prosecutor," and that the request was rejected by the State. For the first time in her brief, she alleges that she went to trial after her attorney advised her that the five-year plea offer was "too low" to be accepted by the State and that she would not have gone to trial had she been aware that she would be required as a habitual offender to serve one hundred percent of her sentence. Hooks does not contend that the State made any offer of a plea bargain or otherwise explain what action counsel should have taken with respect to plea bargaining in her case.

The argument is not grounds to reverse the trial court's order. As noted, Hooks does not contend that the State made a plea offer to her. She also does not allege that there was some offer by the State of a plea bargain that counsel failed to communicate to her. When a petitioner provides no evidence that a plea offer by the State existed or that trial counsel failed to communicate a plea offer, the petitioner's claim of ineffective assistance has no merit. *See Huddleston v. State*, 347 Ark. 226, 61 S.W.3d 163 (2001) (per curiam). Hooks has not shown that counsel was remiss with respect to advising her concerning plea bargaining. *See Leach v. State*, 2015 Ark. 163 (per curiam).

With respect to Hooks's decision to go to trial because her attorney did not advise her of the limits for parole eligibility caused by her status as a habitual offender, the petition below mentioned the requirement that she serve 100 percent of her sentence, but, as stated, Hooks did not allege that she would not have entered a plea of guilty if she had known before trial about the lack of parole eligibility.

To the extent that it could be said that there was an allegation in the petition that counsel had a duty to advise her about parole eligibility, we have held that there is no

constitutional requirement for defense counsel to inform his client about parole eligibility, and the failure to impart such information does not fall outside the range of competence demanded of attorneys in criminal cases. *Riddle v. State*, 2015 Ark. 72; *Cummings v. State*, 2011 Ark. 410 (per curiam); *see also Buchheit v. State*, 339 Ark. 481, 6 S.W.3d 109 (1999) (per curiam); *Haywood v. State*, 288 Ark. 266, 704 S.W.2d 168 (1986). In *Buchheit*, we acknowledged the decision in *Hill v. Lockhart*, 894 F.2d 1009 (8th Cir.1990), wherein the Eighth Circuit granted Hill's petition for writ of habeas corpus on the ground that counsel made positive representations regarding parole eligibility and that counsel's assurances induced Hill to accept a negotiated plea. Distinguishing *Hill*, we concluded that Buchheit's counsel was not ineffective for failing to advise the defendant that he would be required by statute to serve seventy percent of his sentence because counsel made no representations regarding parole eligibility. The trial court did not err in declining to grant relief on Hooks's allegation concerning her lack of knowledge about parole eligibility because she made no assertion in her petition that counsel advised her about parole.

Hooks also argues that her attorney was ineffective because he "lied" to her about whether information gleaned in her pretrial mental evaluation could be used as evidence at trial. The information from the evaluation concerned her being in love with a man other than John Davis. The allegation did not demonstrate that her attorney was ineffective under the *Strickland* standard.

Hooks did not contend in her Rule 37.1 petition that she would not have taken the stand had she been advised that information from the psychological examination could be used

SLIP OPINION

to impeach her. Hooks's defense at trial was that she was acting in self-defense when she injured Davis after he attacked her. She testified that she had told Davis that she had sexual relationships with other men and that he permitted those relationships provided she did not fall in love with any of the men. On cross-examination, when asked by the State if she had fallen in love with one of the men, she said she had done so and that Davis did not like it. Considering that Hooks testified that Davis and she had an open relationship, that he attacked her, and that she wounded him in self-dense, she did not make a showing that she was prejudiced by being asked by the State if she had fallen in love with some man besides Davis. Hooks did not show that there is a reasonable probability that, but for counsel's error, the jury would have reached a different verdict had she not been asked about her relationship with another man.

Hooks next argues that counsel failed to point out to the jury that the "murder weapon"—presumably the scissors found at the scene—bore both her and Davis's blood and DNA, with the majority being hers. In her petition below, Hooks stated that it was impossible that Davis received multiple cuts from the scissors as most of the blood on them was hers. On appeal, she alleges only that counsel did not inform the jury about the blood evidence and that it seems a reasonable attorney would have done so.

As with the prior claim of ineffective assistance of counsel, there is no showing that counsel made some error that prejudiced the defense. The burden is entirely on the petitioner in a postconviction proceeding to provide facts to support a claim of prejudice. *Wertz v. State*, 2014 Ark. 240, 434 S.W.3d 895. Neither conclusory statements nor allegations without factual

substantiation are sufficient to overcome the presumption that counsel is effective and cannot provide a basis for postconviction relief. *Young v. State*, 2015 Ark. 65.

Finally, Hooks refers in her brief to the pathologist's testimony that Davis would not have died from the injuries inflicted on him had he not had a heart condition, that she and the victim had fought before, and that neither she nor the victim knew of his heart condition. The statements were not contained in the petition below; but, even if the claims had been raised below, such arguments constitute a challenge to the sufficiency of the evidence to sustain the judgment and are not cognizable under Rule 37.1. *Anderson v. State,* 2015 Ark. 18, 454 S.W.3d 212 (per curiam). A direct attack on a judgment of conviction is a matter to be raised at trial and on the record on appeal. Rule 37.1 affords the convicted defendant a means to mount only a collateral challenge to a judgment; it does not provide an opportunity to reassess the evidence supporting the judgment. *See Green v. State*, 2013 Ark. 455 (per curiam).

Affirmed.

*Pamela Hooks*, pro se appellant.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.