Cite as 2020 Ark. App. 290

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-19-937

| | | |
|---|---|---|
| | | Opinion Delivered: May 6, 2020 |
| ERIC CARTER | | APPEAL FROM THE HOT SPRING |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 30CR-16-201] |
| V. | | |
| | | HONORABLE EDDY EASLEY, |
| | | JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Eric Carter filed his pro se appeal after the Hot Spring County Circuit Court entered an order denying his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.1. Appellant generally argues on appeal that the circuit court erred in denying relief because his trial counsel was ineffective for failing to adequately investigate witnesses and for failing to call Dr. Dawn Parsons as an expert witness. We affirm.

## I. *Background*

Before addressing the allegations of ineffective assistance of counsel, it is necessary to recite the evidence adduced at appellant's trial. A Hot Spring County Circuit Court jury convicted appellant as a habitual offender for raping T.S., a thirty-one-year-old woman with learning disabilities and characteristics of autism spectrum disorder. Appellant had previously

lived at T.S.'s address before she had moved to that address from Alaska. On April 20, 2016, appellant went to T.S.'s home and she invited him inside. After she asked him to leave, he refused. Appellant pinned T.S. to the sofa and penetrated T.S.'s vagina from behind with his fingers and then his penis. T.S. additionally sustained an injury to her shoulder, and there was a bite mark on her right breast. T.S. subsequently reported the incident to police after her mother came from Alaska to check on her in June 2016.

Jackie S. is T.S.'s mother. At trial, Jackie S. testified that T.S. has a learning disability and the I.Q. of a first grader. Jackie S. received legal guardianship of T.S. when T.S. turned eighteen. Although T.S. had lived in Alaska where Jackie S. resides, T.S. moved to Arkansas after Jackie S. had purchased a home for her. T.S. was taking care of her daily living needs, and Jackie S. was visiting in person about every three to six months in addition to regular video chatting. During Jackie S.'s June 2016 visit, T.S. showed her a bite mark, and Jackie S. observed that T.S.'s behavior had changed. Jackie S. explained that T.S. now acts afraid that something bad will happen to her again.

Dr. Regina Weiner, a licensed psychological examiner, testified that she had evaluated T.S. During the interview, Dr. Weiner observed that T.S. operated with a high level of anxiety. T.S.'s I.Q. was assessed at 46 for nonverbal, 43 for verbal, and 42 for full scale. A standard I.Q. is between 85 and 100. Regarding T.S.'s ability to describe an event that she experienced, Dr. Weiner indicated that T.S. was able to describe it using her own words and to tell you what happened. However, she may tell it out of order or have some problems explaining how many times something had happened. Dr. Weiner further testified that T.S. has characteristics of autism spectrum disorder. In terms of whether T.S. could

2

give reliable testimony, Dr. Weiner opined that T.S. was able to talk, able to remember things that had happened to her, and not likely to deliberately lie. However, T.S. may have things confused and may not express herself well using her language skills. Therefore, Dr. Weiner opined that one may need to additionally corroborate her statements with other testimony and other forms of evidence.

T.S. testified that she was thirty-two years old at the time of trial. She identified appellant in the courtroom and testified that he had raped her at her home on the night of April 20, 2016. Prior to the rape, appellant had previously visited T.S. alone and had taken her to various locations, including the water department, in his gray car. She indicated that appellant had her hold his mail for him because appellant had previously lived at the home before she had moved there. T.S. additionally recalled a previous incident in which appellant took her to a cabin and showed her a "sex movie." Although appellant encouraged T.S. to touch his penis, T.S. refused and made him take her home. T.S. explained that on the night of the rape appellant had parked his car at her home. She told him to leave; however, appellant had told her that it was his home. T.S. testified that appellant had bitten her on her right breast and dug his fingernails into her left arm. Appellant pinned her over the couch and penetrated her vagina with his fingers and his penis. T.S. also testified that appellant had touched her anus. During the rape, appellant asked T.S. if she liked it and threatened her not to tell anyone of the rape or he would kill her.

Sharon Scheel testified that she lived across the street from T.S. Scheel testified that T.S. was friendly and "mentally challenged." Scheel explained that she felt like she was

3

putting puzzles together during conversations with T.S. Scheel testified that T.S. had seemed upset and told her about a sexual assault that occurred in April 2016. T.S. had also shown her the bite mark that was infected at that time. Scheel additionally had observed some bruises on T.S.'s arms. Although Scheel did not call the police after their conversation, she encouraged T.S. to do so. Finally, Scheel testified that she had seen appellant walking in the area on more than one occasion but stated that she had not personally observed appellant at T.S.'s home.

Donald Jordan testified that he also lived in a home across the street from T.S. Jordan explained that he had gotten to know T.S. since she moved in and has learned to understand her speech better over time. He would also assist her with her yard work. Although T.S. had never told him about the rape prior to law enforcement's investigation, he noticed that her behavior had changed after April 2016. She would not talk to him or answer the door as she usually had. After law enforcement started investigating, T.S. told him about the rape.

Jordan additionally testified that appellant had lived in T.S.'s home before she had moved there. He further testified that he observed appellant alone at T.S.'s home on at least three occasions after T.S. had moved there. On one occasion, appellant approached T.S.'s driveway while Jordan was there. Appellant told Jordan that he was interested in the truck parked in the driveway, and Jordan told him that the truck was not for sale. Appellant further learned on that occasion that T.S. lived alone. On other occasions, Jordan observed appellant's wife at the home as well. Although he was not certain of the exact date, Jordan observed appellant's car outside T.S.'s home around midnight in April 2016.

4

Chasity Siratt testified that she previously was employed by the Malvern Police Department as a police-service representative. During her employment, she photographed the alleged bite mark on T.S.'s right breast, and the photographs were admitted into evidence. Officer Jack Seely testified that he was present when T.S. and her mother reported the rape and that his body camera recorded the interview. The video of the interview was played for the jury without objection.

Sergeant Frazier Ford testified at trial that he was involved in the investigation of T.S.'s allegations. During the investigation, T.S. identified appellant from a group of six photographs. Sergeant Ford further testified that T.S. was able to show him the route that appellant had taken when he drove her to the water department as she had alleged. He additionally testified that one of appellant's cars was either gray or silver.

Mona Simms testified that she is a nurse practitioner and treated T.S. in February 2017 for pain in her shoulder. T.S. indicated that her shoulder had bothered her ever since the rape. Simms explained that T.S. was tearful and upset when explaining her injury and the incident that had caused the injury.

Testimony regarding two other rapes that appellant had allegedly committed in a similar manner against two other victims was offered at trial under Arkansas Rule of Evidence 404(b) as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. H.W. testified that appellant had raped her when she had been ill with bronchitis in March 2014. C.R., who has keratoconus, an eye disease, testified that she had reported to law enforcement that she had been raped by appellant in April 2014.

Shanah Nolen testified on appellant's behalf. She explained that she had known appellant for twelve years and that they have one child together. Nolen testified that she did not know T.S.; however, she admitted that she and appellant had formerly lived at the address where T.S. was then living. She further admitted that she and appellant had gone to the address twice to collect their mail in April 2016. The second time they went was after T.S. had called her phone. Nolen alleged that on both occasions she had stayed in the car while appellant went to the door to collect the mail. Finally, Nolen testified that neither she nor appellant had been back to the address since those two times.

After all evidence was presented, the jury found appellant guilty of rape, and appellant was sentenced as a habitual offender to serve a total of 480 months' imprisonment. After appellant's conviction, he appealed, arguing that (1) the trial court erred by denying his motion for directed verdict; (2) the trial court erred in admitting Rule 404(b) evidence of prior rapes that he was alleged to have committed; and (3) the trial court erred in denying his motion for mistrial after the prosecutor spoke to members of the jury during a trial break. We affirmed appellant's conviction but remanded to the trial court with instructions to correct the sentencing order. *Carter v. State*, 2019 Ark. App. 57, 568 S.W.3d 788. An amended sentencing order pursuant to our instruction was filed on March 14, 2019.

## II. *Petition for Postconviction Relief and Rule 37 Hearing*

Following our affirmance, appellant filed his petition for postconviction relief, alleging that he was entitled to relief because his trial counsel was ineffective by trial counsel's (1) failure to investigate the truthfulness of witnesses including H.W., C.W., Don Jordan, T.S., and Sharon Scheel; (2) failure to call expert witness Dr. Dawn Parsons; (3) failure to

6

introduce DVDs; (4) failure to exclude a juror; (5) failure to object to victim-impact evidence; (6) failure to move to dismiss appellant's charge based on a speedy-trial violation; (7) failure to object to the admission of photographs; (8) failure to instruct the jury regarding forcible compulsion; (9) failure to investigate the criminal records of witnesses; (10) failure to adequately question witnesses; and (11) failure to prove that Don Jordan committed perjury.[1] After the State filed its response requesting the circuit court to deny appellant's petition, an evidentiary hearing on appellant's petition was held. Appellant represented himself at the hearing after the circuit court denied his motion to appoint counsel to represent him.

As in his petition, appellant generally testified that his trial counsel, Gregory Crain, was ineffective. More specifically, appellant testified that Crain should have consulted him regarding the State's introduction of H.W.'s and Scheel's testimony. Regarding H.W.'s testimony describing the prior rape, he claimed that Crain should have sought to exclude her testimony pursuant to Arkansas Rules of Evidence 403, 404(b), and 601. He further claimed that Crain failed to thoroughly impeach H.W., that H.W.'s testimony was not credible, and that Crain should have proved that H.W. was lying by conducting a more thorough pretrial investigation. Appellant alleged that there was no evidence that appellant had raped H.W. and that Crain should have verified H.W.'s story with the Monticello

---

[1]Appellant does not challenge a number of the rulings made by the circuit court on these claims. All arguments made below but not raised on appeal are abandoned. *See Abernathy v. State*, 2012 Ark. 59, at 2 n.1 386 S.W.3d 477, 480 n.1. Therefore, although the circuit court specifically denied each of the claims alleged in the petition, we focus on the testimony presented at the Rule 37 hearing regarding the claims appellant argues on appeal.

Police Department even though appellant admitted that he did not know what information Crain would have discovered had he done so. On cross-examination, appellant readily admitted that he did not have any evidence to support his claim that Crain failed to conduct a thorough investigation of the witnesses named in appellant's petition.

At trial, T.S. testified that appellant had taken her to a cabin at Camp Couchdale where he worked. T.S. testified that at the cabin, he showed her a "sex movie" and asked her to touch his penis. She stated that she refused, and he eventually took her home after she insisted. Appellant obtained a letter from Hughes & Hughes Law Firm which indicated that appellant had worked at Camp Couchdale for a short time, that he was not issued any keys, and that he did not have independent access to any of the buildings. The letter was admitted at the Rule 37 hearing without objection. Appellant testified at the hearing that Crain failed to introduce the letter at trial and that the letter would have impeached T.S.'s testimony. Appellant also testified there was a DVD that contained statements that T.S. had made to the prosecutor and law enforcement regarding appellant's taking her to a cabin at Camp Couchdale where they watched pornographic movies and he sexually assaulted her. Appellant testified that Crain failed to introduce the DVD, which would have shown T.S.'s testimony was inconsistent. Finally, appellant testified that Crain refused to introduce Dr. Parsons's report at trial. He claimed that Dr. Parsons's report would have proved that T.S. had a propensity to "invent or mistake actual facts."

Crain testified that he had represented appellant at trial. Regarding the allegation that he failed to introduce the DVD regarding T.S.'s statements concerning events that took place at Camp Couchdale and the letter from the law firm, Crain testified that he made a

conscious decision not to introduce that evidence as a matter of trial strategy. He explained that the evidence on the DVD would have been detrimental to appellant because the DVD indicated that appellant may have raped T.S. more than once. T.S. testified at trial that appellant had raped her at her home; the DVD and the letter were obtained in a separate investigation into whether appellant also raped T.S. in a cabin at Camp Couchdale. According to Crain, T.S. could never specify a place or time that she was raped at Camp Couchdale. Therefore, the DVD and the letter did not help appellant's case but would only disclose information that other uncharged rapes may have occurred.

Appellant testified that Crain failed to investigate the State's witnesses. Crain testified that the State provided him with the criminal history of the State's witnesses; however, there was nothing useful for cross-examination purposes. Crain was aware of rumors that there may have been other rape allegations that may have been made by T.S. in Alaska and Missouri; however, Crain testified he "never could track that down and that—that wasn't true either."

Appellant testified that Crain failed to introduce a report by a psychologist, Dr. Parsons. During Crain's testimony, when he was asked why he did not admit Dr. Parsons's report, Crain testified that he did not want to introduce her report because the report indicated that T.S. was being truthful, which would have been harmful to appellant.

After the parties rested and after the circuit court had a recess, Crain came to realize that he had testified incorrectly about Dr. Parsons's report. When Crain testified earlier, Crain had confused Dr. Parsons with Dr. Weiner. Crain did not recall Dr. Parsons ever completing a report. Crain informed the prosecutor of his mistake, and the prosecutor

9

informed the circuit court. The circuit court inquired of the appellant. In response, appellant agreed that Dr. Parsons was not in the courtroom on the day of trial, but he contended that Dr. Parsons did complete a report and should have been called as an expert witness. When the circuit court inquired whether the parties wanted to reopen the record and recall Crain to clear up any confusion on the issue, appellant objected. The circuit court sustained the objection, and Crain was not recalled.

After the evidentiary hearing, the circuit court denied appellant's petition in a detailed written order filed on October 28, 2019, making the following relevant findings:

> Attorney Gregory Crain represented Mr. Carter at trial and Mr. Carter's first allegation is that Mr. Crain was ineffective for failing to properly investigate the State's witnesses: [H.W.], [C.R.], Don Jordan, [T.S.] (the victim), and Sharon Scheel.

> As to [H.W.], [C.R.], and Jordan, Mr. Carter makes conclusory allegations that Mr. Crain should have investigated them regarding their truthfulness. He offered no proof that an investigation would have produced any relevant evidence that could have been offered in impeachment. Relief is denied on these three allegations.

> Regarding [T.S.] and Scheel, Mr. Carter argues that Mr. Crain was ineffective because he did not do any investigation regarding the truthfulness of these witnesses and that a doctor should have been called to impeach [T.S.]. [T.S.'s] mother and her psychologist testified that she was autistic and often had trouble accurately relaying information. She testified at trial that during the rape, Mr. Carter knocked all of her teeth out. Both the State and Mr. Crain raised the issue in their examinations of [T.S.] and it was clear to all present that she had all of her teeth. Mr. Crain's conduct did not fall below a level of reasonable professional assistance by failing to call a doctor to testify that [T.S.] had all of her teeth.

> Sharon Scheel testified that when she talked to [T.S.], [T.S.] appeared to have teeth missing. This issue had already been settled and there was no need to rebut the testimony. Moreover, Mr. Carter has not offered any proof as to what any additional investigation would have produced. Relief as to these two witnesses is denied.

> Mr. Carter also claimed that Mr. Crain failed to call a defense expert, Dawn Parsons. Mr. Carter did not provide any evidence as to what Dr. Parsons would

10

have testified to, nor did he admit into evidence any report prepared by Dr. Parsons. Relief as to this claim is denied.

The failure of Mr. Crain to introduce two DVDs into evidence is the basis for Mr. Carter's next claim of ineffective assistance of counsel. Mr. Crain testified that both DVDs had information on them that would have been very damaging to Mr. Carter and it was Mr. Crain's opinion that it was not in Mr. Carter's best interest to present those items to the jury. The Court finds this was a reasonable and prudent trial strategy and that Mr. Crain's conduct did not fall below a level of reasonable professional assistance.

Mr. Carter next claims that Mr. Crain was ineffective for failing to exclude a juror with whom Mr. Carter had conflicts. Mr. Carter testified he told Mr. Crain of the conflicts with this juror. Mr. Crain testified that Mr. Carter never told him any such thing. The Court finds Mr. Crain's testimony credible and discounts the testimony of Mr. Carter. Relief is denied on this point.

Mr. Carter claims that Mr. Crain was ineffective for failing to object to victim-impact evidence. No victim-impact evidence was offered at the trial. To the extent that Mr. Carter intended to argue that the 404(b) evidence offered at trial was inappropriate and Mr. Crain was ineffective for failing to object to it, the Court finds that Mr. Crain did object to it and the court of appeals, on direct review, has already ruled that the evidence was properly admitted. *Carter v. State*, 2019 Ark. App. 57, at 15–16. Relief is denied on this point.

Mr. Carter also claims that Mr. Crain was ineffective for failing to have the case dismissed for violation of speedy trial rules. Mr. Carter was arrested on July 29, 2016, and was tried on November 1, 2017, 95 days outside of the one-year limitation period for speedy trial. However, as the State argued, significant portions of time were tolled due to continuances granted and an examination of only two of the tolled periods demonstrates that the trial was had within the speedy trial rules.

The Court granted a continuance at the defense's request on February 15, 2017, for the purpose of having the victim evaluated by a psychologist. The trial had originally been scheduled on January 17, 2017, and the trial was continued to April 7, 2017, a total of 85 days.

The Court also granted a defense motion to continue and entered the order on April 28, 2019 and reset the trial to August 30, 2017, an additional 124 days. Even if only those two events are calculated, that is a total of 209 days of tolled time. The trial was well within the speedy trial limitation period. Relief is denied on this point.

11

Mr. Carter also alleges that Mr. Crain was ineffective for failing to object to photographs. The photographs in this case were of bite marks to [T.S.'s] breast. There was no gore and the photographs were not inflammatory. They accurately reflected the victim's injury. Any motion objecting to the photographs would have been denied. Relief is denied on this point.

Mr. Carter alleges that Mr. Crain was ineffective for failing to get dental records to prove the bite marks on [T.S.] did not come from him. Mr. Crain testified that Mr. Carter never told him that the bite marks were not his and the Court finds his testimony credible. As Mr. Carter is in the unique position of knowing whether he caused the bite marks, the Court finds it significant that he did not tell Mr. Crain to get dental records. Mr. Crain's conduct on this point did not fall below a level of reasonable professional assistance. Relief is denied.

Mr. Carter's next claim is that Mr. Crain was ineffective for failing to instruct the jury on the element of forcible compulsion. The Court finds that the jury was instructed on the forcible compulsion element when the Court read the jury instructions to the jury. Relief is denied on this point.

The next claim is that Mr. Crain was ineffective for failing to get the criminal histories of [H.W.] and [C.R.]. Mr. Crain testified that he had their criminal histories and there was nothing in them useful for impeachment. Mr. Carter offered no evidence that either [H.W.] and [C.R.] had criminal histories that could have been used to impeach them. Also, as part of this claim, Mr. Carter argues that Mr. Crain should have obtained credit and sexual histories of [H.W.] and [C.R.]. The Court finds that these two areas of investigation would have been denied and Mr. Carter has offered no evidence that any such histories would have provided admissible evidence. Relief is denied on these points.

Mr. Carter's next claim is that Mr. Crain was ineffective for failing to properly question [H.W.], [C.R.], Jordan, [T.S.], and Scheel. He does not offer anything as to what questions should have been asked or what testimony would have been gained by those questions. He has just made conclusory allegations. The Court does find that Mr. Crain thoroughly cross-examined the witnesses, made many timely objections, and repeatedly tried to keep damaging information from being presented to the jury. Mr. Crain's conduct did not fall below a level or reasonable professional assistance. Relief is denied.

The final claim is that Mr. Crain was ineffective for failing to prove that Don Jordan committed perjury. Mr. Jordan testified that he was a neighbor of [T.S.] and that he knew Mr. Carter when he had been the tenant in the house now occupied by [T.S.]. Mr. Carter offered no proof that Mr. Jordan lied, or, that if he did, that would have changed the outcome of the case. Mr. Carter has made a conclusory allegation. Relief is denied.

The Court denies relief on all allegations raised by Mr. Carter in his Rule 37 petition.

This appeal followed.

### III.  *Standard of Review*

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous.  *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234.  A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed.  *Id.*  In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence.  *Id.*

Our standard of review also requires that we assess the effectiveness of counsel under the two-pronged standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Conley*, *supra*.  In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first demonstrate that counsel's performance was deficient.  *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694.  This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment.  *Id.*  The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.*  The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment.  *Id.*

13

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Conley*, *supra*. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*.

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id*. We also recognize that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697).

IV. *Failure to Investigate*

Appellant first argues on appeal that the circuit court erred in denying relief because his trial counsel was ineffective for failing to adequately investigate witnesses. Appellant specifically argues that Crain should have investigated T.S.'s medical and mental health background "to uncover other sexual allegations she had made against others and thereby secure evidence to develop a persuasive defense that T.S. has a history of making up imaginary sexual encounters." He further states that because Crain had not properly investigated and prepared for trial, he failed to adequately impeach T.S.'s testimony regarding how she paid her water bill and her allegation that appellant sexually assaulted her inside a cabin at Camp Couchdale. Appellant alleges that a letter provided from Hughes &

14

Hughes Law Firm stated that appellant only worked at Camp Couchdale for a short time, was not issued any keys, and did not have independent access to any buildings. Appellant additionally alleges that Crain's cross-examination of H.W. was deficient because of his lack of investigation and preparation for trial. Under this point, appellant further argues that Crain should have filed a pretrial motion to prevent Scheel from testifying at trial.

A petitioner under Rule 37.1 who alleges ineffective assistance of counsel for failure to perform an adequate investigation must delineate the actual prejudice that arose from the failure to investigate and demonstrate a reasonable probability that the specific material that would have been uncovered with further investigation could have changed the outcome of the trial. *Gordon v. State*, 2018 Ark. 73, 539 S.W.3d 586. Neither conclusory statements nor allegations without factual substantiation are sufficient to overcome the presumption that counsel was effective and cannot provide a basis for postconviction relief. *Id.* General assertions that counsel did not aggressively prepare for trial are not sufficient to establish a claim of ineffective assistance of counsel. *Id.*

All of appellant's arguments under this point lack merit. Appellant's arguments that Crain failed to adequately investigate impeachment material in preparation for T.S.'s and H.W.'s testimony are conclusory at best and insufficient to provide a basis for postconviction relief. Crain testified at the Rule 37 hearing that he investigated the witnesses' criminal backgrounds and any rumors concerning claims made by T.S. in Alaska and Missouri; however, he did not obtain any useful evidence from those investigations. Moreover, appellant appears to expand his argument on appeal in alleging that Crain failed to adequately impeach T.S. regarding the method she used to pay her water bill. An appellant is limited

15

to the scope and nature of his arguments made below, and we consider only those arguments that were considered by the circuit court in rendering its ruling. *Anderson v. State*, 2015 Ark. 18, 454 S.W.3d 212 (per curium).

Next, Crain testified that as a part of his trial strategy, he did not introduce the DVD and the letter from a law firm that was obtained as a result of an investigation into whether appellant may have committed additional rapes at Camp Couchdale. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Williams v. State*, 2017 Ark. 123, 517 S.W.3d 397; *Smith v. State*, 2016 Ark. 417, 504 S.W.3d 595. Even if counsel's tactical choices had been different with the benefit of hindsight, the fact that the strategy was unsuccessful does not render counsel's assistance ineffective. *Williams*, *supra*. Moreover, our supreme court has held that the extent to which a witness is questioned, the specific manner of questioning, and the tactical considerations attending those issues do not warrant relief under Rule 37. *Lemaster v. State*, 2015 Ark. 167, 459 S.W.3d 802.

Finally, although appellant argues that Crain should have filed a pretrial motion to prevent Scheel from testifying at trial, he fails to specifically explain under what basis such a motion would have been granted other than to generically state that he did not commit the offense. Because appellant failed to prove he is entitled to relief under *Strickland*, we cannot say that the circuit court's denial of relief for the grounds alleged under this point is clearly erroneous, and we affirm.

V. *Failure to Call Dr. Dawn Parsons as an Expert Witness*

Next, appellant argues on appeal that the circuit court erred in denying relief because his trial counsel was ineffective for failing to call Dr. Dawn Parsons as an expert witness. He specifically argues that Dr. Parsons's testimony was necessary to show that T.S. had a habit of fabricating sexual stories. He further argues that Dr. Parsons would have provided Crain with valuable information regarding the effects and characteristics of autism spectrum disorder to allow him to effectively cross-examine Dr. Weiner. He alleges that had Crain consulted Dr. Parsons, "he would have discovered that exceptionally qualified experts could be found who would have undermined T.S. credibility to testify competently."

Regarding trial counsel's decision whether to interview or call a witness, such matters are generally trial strategy and outside the purview of Rule 37.1. *Gordon*, *supra*. The objective in reviewing an assertion of ineffective assistance of counsel for failure to call certain witnesses is to determine whether that failure resulted in actual prejudice that denied the petitioner a fair trial. *Maiden v. State*, 2019 Ark. 198, 575 S.W.3d 120. Where a petitioner alleges ineffective assistance of counsel for failure to interview or call a witness, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Gordon*, *supra*. In order to demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *Id*. When assessing counsel's decision not to call a particular witness, we must take into account that the decision is largely a matter of professional judgment, and the fact that there was a witness or witnesses who

could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Id*.

We agree with the circuit court that appellant failed to meet this burden. At the Rule 37 hearing, appellant testified that Crain should have called Dr. Parsons, a clinical psychologist, who appellant alleged interviewed T.S. in 2016. He further asserted that the State gave Crain a copy of Dr. Parsons's report that "could have provided invaluable information concerning [the] victim's truthfulness had it been entered into the record." After Crain testified concerning what he believed was Dr. Parsons's report, the State told the circuit court that Crain was actually thinking of Dr. Maria Weiner, who examined T.S., prepared a report, and testified at trial. The State indicated that Crain did not believe that Dr. Parsons had prepared a report in this case. Appellant, on the other hand, claimed that Dr. Parsons did prepare a report but objected when the State sought to recall Crain to clarify his testimony. Despite appellant's assertion, appellant failed to introduce as evidence any report prepared by Dr. Parsons nor did he summarize what Dr. Parsons would have testified to if called as an expert witness. Thus, appellant has failed to meet his burden of establishing that he suffered actual prejudice due to Crain's failure to call Dr. Parsons as an expert witness.

Accordingly, we find no clear error in the circuit court's denying appellant Rule 37 relief and affirm.

Affirmed.

GRUBER, C.J., and SWITZER, J., agree.

*Eric Carter*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

18